IRVING, J.,
for the Court:
¶ 1. Michael Sims (Sims), Toni Sims and Kimberly Sims filed an action in Jones County Circuit Court to recover damages for personal injuries and damages to their vehicle when they collided with Billy R. Collins. A jury returned a verdict in favor of Collins. After the Simses’s post-trial motions were denied by the trial court, they perfected this appeal, assigning for our review the following issues which are quoted verbatim from their brief:
I. THE TRIAL COURT ERRED IN SUSTAINING THE MOTION IN . LIMINE OF THE DEFENDANT.
II. THE TRIAL COURT ERRED IN UNDULY LIMITED [SIC] THE PLAINTIFF IN CROSS EXAMINATION OF THE DEFEN- ■ DANT.
III. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE PLAINTIFF TO EXPRESS AN OPINION AS TO THE COST OF RESTORING HIS VEHICLE.
Finding reversible error in the trial judge’s grant of Collins’s motion in limine, we reverse and remand.
FACTS
¶ 2. Michael Sims and Billy Collins were both proceeding north on Interstate 59 when their vehicles collided. It is undisputed that the point of contact between the vehicles was to the right side of Sims’s vehicle and to the left side of Collins’s vehicle; however, at trial the Simses and the Collinses gave different accounts as to the events which led to the accident. Sims testified that as he and his family returned home from Hattiesburg, he entered onto 1-59 going north. Sims stated that he saw Collins’s vehicle in the left lane of the interstate. After entering the interstate, Sims pulled into the left lane behind Collins’s car. Sims stated that he and Collins both stayed in the left lane until they approached the Leaf River Bridge. When Sims and Collins arrived at the bridge, *787 Collins moved into the right lane. Sims remained in the left lane and proceeded to pass Collins. Sims testified that he stayed in the left lane because he knew that construction was ahead and that the right lane was closed. While attempting to pass Collins, Sims saw Collins pulling back into the left lane overtaking Sims’s vehicle and consequently bumping Sims’s vehicle twice. According to Sims, Collins exited Collins’s vehicle and in an instant pointed and aimed a pistol at the Simses.
¶ 3. Collins testified that Sims followed closely behind his vehicle for approximately one and a half miles before he and Sims approached the bridge. As Sims followed, Sims continuously flashed his high beam and low beam headlights. Collins stated that as he attempted to pull into the right lane, Sims attempted to pass Collins before Collins could clear the left lane, and as a consequence, Sims hit Collins’s vehicle.
ANALYSIS OF THE ISSUES PRESENTED

I. Did the trial court err in granting Collins’s motion in limine?

¶ 4. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Thompson Mach.Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). The trial court does not abuse its discretion in granting a motion in limine if he determines that 1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and 2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988).
¶ 5. Collins filed a pretrial motion in limine to exclude the Simses from presenting any testimony or evidence based on paragraph III of the Simses’s complaint. Paragraph III states:
The Defendant (Collins), an instant after the collision, exited his vehicle and pointed and aimed at the Plaintiffs (the Sims-es) a pistol or firearm and brandished it and exhibited it in the presence of the Plaintiffs in a dangerous and threatening manner, thereby placing the Plaintiffs in fear of eminent serious bodily injury at his hands and in violation of laws and constituting criminal misconduct for which they now sue the Defendant.
¶ 6. In his motion in limine, Collins argued that paragraph three was prejudicial to him and was without basis or connection to the collision, constituting a separate factual matter. The Simses argue that Collins’s actions after the collision were so inexorably joined together in time and with the chain of events surrounding the accident that it was impossible for the jury to get a clear picture or clear understanding of the entire incident without this evidence.
¶ 7. The Simses also argue that the complaint contained two separate causes of actions and that they were entitled to bring both in one proceeding. Collins agrees the complaint contains two separate causes of action and agues that Rule 10(b) of the Mississippi Rules of Civil Procedure requires the two causes to be pled in separate counts. The trial judge, without making a specific 'finding, sustained Collins’s motion.
¶ 8. The subject paragraph sounds much like an allegation of an assault with a deadly weapon and does contain a statement that the Simses are suing Collins for that action. However, when the complaint, though inartfully drafted, is read in its entirety, including an inartfully crafted prayer, it is clear that the Simses were suing for damage to their person, including damages stemming from both physical injury and the emotional stress emanating from having a gun intentionally pointed at them immediately after the accident. There was no evidence of any separate provocation on the part of the Simses to warrant Collins’s gun-brandishing action.
*788 ¶ 9. In paragraph V of their complaint, the Simses alleged:
The injuries that the Plaintiffs suffered were to various and numerous portions of their bodies. Due to the trauma, from the said assault the Plaintiffs suffered mental and emotional fear, dread, anguish and will continue to so suffer, for which they demand compensation.
Paragraph III, quoted on page 3 of this opinion, is a textbook allegation of an assault with a deadly weapon. The language in paragraph V alleging trauma from the “said assault” could only refer to the assault described in paragraph III as do the allegations of mental and emotional fear, dread and anguish.
¶ 10. The Mississippi Supreme Court has held that a court looks to the content of pleadings to determine the nature of the action. West v. Combs, 642 So.2d 917, 920 (Miss.1994) (citing Pierce v. Chapman, 165 Miss. 749, 755, 143 So. 845, 847 (1932)). “Substance is considered over form.” Id. (citing Lancaster v. Jordan Auto. Co., 185 Miss. 530, 545, 187 So. 535, 537 (1939)). The label is not controlling. Id.
¶ 11. We are unpersuaded by Collins’s argument that the Simses’s failure to plead their claims in separate counts warranted the trial judge’s exclusion of the pistol-pointing evidence. “MRCP Rule 10(b) requires claims to be presented in separate counts only when two conditions are met: the claims must be founded upon separate transactions or occurrences and a separation must facilitate the clear presentation of the matters set forth.” MRCP 10(b) cmt. As stated, we do not find that the pistol-pointing incident arose out of any separate occurrence. Further, the rule regulates the form of pleadings, not the admissibility of evidence.
¶ 12. The jury was entitled to hear the complete story of what happened as a part of the res gestae of the incident giving rise to the Simses’ cause of action. See, e.g., Oates v. State, 437 So.2d 441 (Miss.1983); Woods v. State, 393 So.2d 1319 (Miss.1981); McCormick v. State, 159 Miss. 610, 132 So. 757 (1931). Though the impact to the vehicles had occurred before Collins exited his vehicle and pointed the gun- at Mr. Sims, it was part and parcel of the continuing event, for there is not the slightest hint or suggestion in the record that the gun-pointing incident was the result of some separate altercation between the Simses and Collins. Having chosen to intimidate the Simses by brandishing his gun at them, Collins should not be able to profit from- his own wrongful actions by claiming the incident to be so prejudicial that evidence of its occurrence should be kept from the jury. This is especially true since the gun-brandishing incident was a part of the totality of circumstances surrounding the vehicle collision.
¶ 13. Further, we reject Collins’s argument that evidence of the gun-pointing incident is irrelevant as to Collins’s role in the causation of the accident, for the jury could have interpreted Collins’s action in pointing the gun as an attempt to shield his guilt in causing the accident by this act of intimidation. In other words, while the gun-pointing incident had nothing- to do with causing the accident, it may very well have been viewed by the jury as pointing a finger at the person guilty of actually causing the accident, and that was the ultimate issue to be resolved by the jury in the negligence claim.
¶ 14. Accordingly, we hold that the jury should have been allowed to hear the entire series of events connected with the accident. The Mississippi Supreme Court has held that, before a trial judge grants a motion in limine, the judge must be certain that such action will not unduly restrict the opposing party’s presentation of its case. Whittley, 530 So.2d at 1344. We find that Collins’s alleged action of brandishing a pistol immediately following the accident is relevant and that the Simses should have been allowed to introduce evidence concerning Collins’s action immediately following the impact. The trial court’s order *789 unduly restricted the Simses from presenting their case; therefore, the trial court abused its discretion in granting the motion in limine.
¶ 15. Additionally, Collins contends that the Simses failed to make a proffer of any evidence on the motion in limine. Before a party may secure appellate reversal on an evidentiary exclusion, the party must have placed in the record the substance of the evidence he would have offered had the court ruled otherwise. Heidel v. State, 587 So.2d 835, 844 (Miss.1991). Collins cites several other authorities to support his proposition. See Salter v. Watkins, 513 So.2d 569 (Miss.1987); Harris v. Shields, 568 So.2d 269 (Miss.1990); Buchanan v. Buchanan, 587 So.2d 892 (Miss.1991); Whigham v. State, 611 So.2d 988 (Miss.1992); Brent v. State, 632 So.2d 936 (Miss.1994). In Heidel the motion to exclude evidence was made during trial.
¶ 16. The pleadings in this case provide an adequate record of what evidence the Simses would" have offered had the court not sustained the motion in li-mine. The motion in limine was granted prior to trial and contained a statement of the evidence to be excluded. Therefore, we do not find a need for any additional offer by the Simses. The purpose of requiring that a proffer of excluded evidence be included in the record is to ensure the availability of the evidence for appellate perusal in terms of relevance. Collins’s contention that we are unable to consider the Simses’ contention on this issue is without merit.

II. Did the trial court err in unduly limiting the Simses in the cross examination of Collins?

¶ 17. Next the Simses contend the trial judge erred in limiting their cross-examination of Collins regarding pictures taken on the morning after the collision. The Simses argue that had the cross-examination not been limited, the Simses would have been able to show through the cross-examination of Collins that the photographs depicted damage to the vehicles that was consistent with the account given by the Simses. The following colloquy occurred during cross-examination:
Q: Let me ask you this. I want to— You’ve seen the photographs. I’m sure you and Mr. Melvin have been over them several times. How is what Mr. Sims said physically inconsistent with what his photographs show? You’ve looked at them, the .photographs. I’ll let you look at them again. There’s marks all up and down on his vehicle. I’ve handed you all of them.
A: There are not marks all up and down. The marks on his vehicle are consistent with the marks on my vehi-. ele. I was in the lead. I was in front.
I started merging. He come up behind me and swiped me on the side of my vehicle as I was moving over into the right-hand lane. If he was in such a big hurry, he did not give me the opportunity to completely get in the right lane before he passed me.
Q: Since you told me all that, would you look at the photographs and look and see if those marks are not what he has said all the time aré caused in the collision, "the photographs that are before you?
A: The photographs there?
Q: Exhibits 1 through 7 for the Plaintiff. Look and see if they’re not what he says they were. They show marks all the up and down the vehicle?
A: The vehicle — The photographs here show marks starting at about the front right quarter of his car and go back to about the rear-view mirror to the edge of the back door of his vehicle.
Q: I don’t know what you’re calling right front quarter. They start on the front fender, don’t they?
A: Yes, sir.
Q: To all the way to the rear?
A: Go to the back of the back door.
*790 Q: Sir?
A: Go to the back of the door.
THE COURT: Do you have the pictures?
MR. BUCKLEY (Sims’s Counsel): He’s looking at them.
THE COURT: Hasn’t the jury already seen them?
■MR. BUCKLEY: Yes, Sir. I’m asking him what the photographs show. I’m asking him to describe it, how it’s inconsistent with what Mr. Sims said.
THE COURT: He’s already described it. Let’s move on.
¶ 18. The scope of cross-examination is ordinarily broad. Thompson Mach., 687 So.2d at 152. Parties may liberally cross-examine a proffered witnesses on the basis of his opinion and regarding bias and interest. Id. The extent of cross-examination, however, lies within the sound discretion of the trial court, and we will reverse only when an abuse of that discretion is shown. Johnson v. State, 756 So.2d 4 (¶ 8) (Miss.Ct.App.1999). The trial court did not abuse its discretion. The above colloquy reflects that the Simses were not prevented from exploring whether the pictures were consistent or inconsistent with Mr. Sims’s account. The Simses were not unduly limited in their cross-examination of Collins.

III. Did the trial court err in refusing to allow Mr. Sims to express an opinion as to the cost of restoring his vehicle?

¶ 19. At trial, the Simses attempted to introduce a repair estimate on the damages sustained to the vehicle. Collins, however, objected on the basis that damages should be proven by expert testimony and not by testimony given by Sims. The trial judge sustained Collins’s objection. After rebuttal, Sims testified on proffer that he made every reasonable effort to determine what it would cost to restore his vehicle. The Simses argue on appeal that Sims, as the owner, was qualified to value the damages to his vehicle.
¶ 20. It is well established and pronounced in our jurisprudence that where costs of repairs are relied upon as the measure of damages, the proof must establish 1) that the repairs were necessary as the result of the wrongful act, and 2) that the cost was reasonable. National Fire Ins. Co. of Hartford v. Slayden, 227 Miss. 285, 290, 85 So.2d 916, 918 (1956). The court in National Fire stated that repair bills alone are insufficient to establish the necessity and reasonableness of the repairs. Id. The court further stated that the proof could be best established by a mechanic; however, the court did not specifically hold that such proof could only be made by a mechanic. Id.
¶ 21. In Bryan Bros. Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964), Mrs. Grubbs, the plaintiff, sought to introduce a copy of her repair bills into evidence. The only proof offered to establish the necessity and reasonableness of the repair bills was the testimony of Mrs. Grubbs. Mrs. Grubbs did not qualify as a mechanic. Mrs. Grubbs testified at trial that the repairs were necessary as a result of damages sustained in the accident and that the car was not up to par after the accident. The Mississippi Supreme Court held that the proof was insufficient to establish the necessity or reasonableness of the cost of the repairs. Id. at 293.
¶ 22. Likewise in the case sub judice, Mr. Sims is not an auto body repairman nor was he qualified as an expert; therefore, any testimony from him, if allowed, would have been insufficient to establish the necessity and reasonableness of the cost of the repairs. The Simses argue, however, that they were never allowed to lay a predicate in order to introduce the evidence or offer proof of the damages. The record clearly shows that the trial court on redirect instructed the Simses to lay the proper predicate as to Sims’s knowledge of auto repairs and after laying the proper predicate, the court would allow *791 Sims to testify regarding his evaluation of the value of the damages. However, after a few more questions, which were objected to by Collins, the Simses abandoned that line of questioning and failed to qualify Sims as an expert witness.
¶ 23. The Simses argue that Meredith v. Hardy, 554 F.2d 764, 765 (5th Cir.1977) allows the owner of personal property to give his opinion as to the value of that property and that' Mr. Sims should have been allowed to express his opinion. In Meredith, the lower court was not put in error for allowing the Merediths to testify as to the value of their destroyed truck and camper. The Meredith court held that the owner is always competent to give his opinion on the value of his property. Id. at 765. The facts in Meredith are distinguishable from the facts in the case sub judice. The Simses, however, attempted to introduce testimony on the cost of repairs and not give testimony as to the total value of the vehicle after the accident. Since the Simses failed to qualify Sims as an expert witness, the trial court did not err in refusing to allow Sims to express an opinion as to the cost of restoring the vehicle.
¶ 24. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST THE APPELLEE.
KING P.J., BRIDGES, LEE, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND MOORE, J.